1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT

8        CENTRAL DISTRICT OF CALIFORNIA

9        WESTERN DIVISION

10

| | | |
|---|---|---|
| 11 MARK F. PERRY, | ) | No. CV 07-06164-VBK |
| | ) | |
| 12              Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| 13     v. | ) | |
| | ) | (Social Security Case) |
| 14 MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| 15 Security, | ) | |
| | ) | |
| 16              Defendant. | ) | |
| | ) | |

17

18        This matter is before the Court for review of the decision by the

19 Commissioner of Social Security denying Plaintiff's application for

20 disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have

21 consented that the case may be handled by the Magistrate Judge.  The

22 action arises under 42 U.S.C. §405(g), which authorizes the Court to

23 enter judgment upon the pleadings and transcript of the Administrative

24 Record ("AR") before the Commissioner.  The parties have filed the

25 Joint Stipulation ("JS"), and the Commissioner has filed the certified

26 AR.

27        This Memorandum Opinion will constitute the Court's findings of

28 fact and conclusions of law.

1    After reviewing the matter, the Court concludes that for the

2  reasons set forth in this Opinion, this matter will be remanded for

3  further hearing.

4

5                              **INTRODUCTION**

6    Plaintiff raises a single issue in this case: whether the

7  Administrative Law Judge ("ALJ") properly considered Plaintiff's

8  mental impairment. (JS at 4, et seq.)

9    In his Decision (AR 9-15), the ALJ found that Plaintiff has no

10 severe impairments.  Thus, the analysis and decision did not proceed

11 past what is typically denominated the second step of the five-step

12 process.

13   Plaintiff asserts that the record contains sufficient evidence

14 indicating a possible mental impairment of a severe enough level to

15 have required the ALJ to order further development of the record.  The

16 evidence cited by Plaintiff consists, in summary fashion, of the

17 following:

18   •    In a Disability Report accompanying Plaintiff's initial

19        application, which was dated December 2, 2005, Plaintiff

20        stated that he is taking the drug "Lecapro" prescribed by

21        Dr. Borut of the Concespra Medical Group, for "depression."

22        (AR 51.)[1]

23   •    The disability analyst who conducted the interview noted

24        that Plaintiff "seemed depressed during the interview." (AR

25        47.)

26

27      [1]   Plaintiff indicates in the JS that this reference was to the
   actual drug "Lexapro." (JS at 4.)  The Commissioner does not dispute
28 this contention in his portion of the JS.

2

1      •    A progress note completed by Dr. Dowell of Torrance Family

2           Practice, in Torrance, California, produced pursuant to a

3           request from the Department of Social Services dated

4           December 8, 2004, indicates an apparent diagnosis of

5           depression.  Further, the same progress note indicates that

6           Plaintiff is taking Lexapro, and the doctor notes,

7           "[Plaintiff] on Lexapro wants to stop still has to go thru

8           court." (AR 87.)

9      •    Plaintiff was taking Amitriptyline for depression, as

10          documented by Dr. Benrazavi, a doctor of internal medicine

11          who conducted a consultative examination ("CE") at the

12          request of the Department of Social Services, after referral

13          by the ALJ, on November 29, 2006. (AR 192, 14, 132-137.)

14     •    At the hearing before the ALJ, Plaintiff testified

15          erratically and indicated he was having personal problems

16          and difficulty concentrating. (AR 181, 191.)

17     •    The CE concluded that psychiatric evaluation for Plaintiff

18          was highly recommended. (AR 137.)

19

20          The Commissioner's response, again in summary fashion, is that

21     while it is correct that the intake documents corroborate Plaintiff's

22     statement that Dr. Borut prescribed medication for depression and that

23     the interviewer noted that Plaintiff seemed depressed (JS 8), the

24     medical records indicate that Plaintiff received treatment from Dr.

25     Borut for right ankle strain. (Id.)  The Commissioner notes that Dr.

26     Borut's records fail to indicate any treatment for depression. (Id.)

27     The Commissioner also acknowledges the progress note from Dr. Dowell

28     indicating a diagnosis of depression, but argues that this was not

accompanied by any objective findings supporting the diagnosis, although the progress note did indicate a prescription for Lexapro, an antidepressant. (JS 8, citing AR 87.)  The Commissioner further notes that after being contacted by a State Agency analyst on December 29, 2004 to inquire about possible depression, Plaintiff denied such a condition existed and stated that he was not seeking any psychiatric intervention. (JS 8-9, citing AR 72, 100-101.)  The Commissioner further notes that additional medical evidence obtained prior to the October 2006 hearing before the ALJ indicated that Plaintiff had a worker's compensation claim which involved an alleged right lower extremity injury, and that his employment had been terminated for unrelated reasons in November 2004. (JS 9.)  Finally, the Commissioner notes that Plaintiff was asked by the ALJ at the hearing why he was unable to work, and in response, Plaintiff responded that he had problems with his legs. (JS 9, citing AR 167-168.)  The Commissioner notes that the ALJ did order the CE, but cites to the Court that portion of Dr. Benrazavi's report which incorporates Plaintiff's statements to the physician that his problems mainly involved issues concerning his legs. (JS 9-10, citing AR 132-133.)  Although the Commissioner notes that Plaintiff admitted to being very "stressed" during this examination, he was in no acute distress. (JS 10, citing AR 133-134.)  The Commissioner indicates that Dr. Benrazavi's recommendation of a psychiatric evaluation is based on this stress, which, the Commissioner believes, is related to allegations of difficulty sleeping and a somewhat anxious appearance during his presentation. (JS 10.)

Finally, the Commissioner notes that the ALJ obtained additional treating records from King-Drew Medical Center, which only indicated

4

1   that Plaintiff had presented to the neurology clinic in 2006 with

2   complaints of low back pain and leg pain, and that Plaintiff denied

3   other medical issues. (JS 10, citing AR 144-146, 148-157.)

4

5          **A.     <u>Analysis</u>**.

6          Plaintiff was unrepresented at the hearing before the ALJ. (AR

7   159.)  While the Commissioner correctly notes that at Step Two of the

8   sequential analysis, it is Plaintiff's burden to show that he has a

9   severe medically determined impairment (<u>see</u> JS 10, and cases cited),

10  and, while the Commissioner acknowledges the ALJ's special duty to

11  develop the record fully and fairly (<u>see</u> JS 11, and cases cited), he

12  argues that the evidence in this record was insufficient to trigger a

13  duty to develop the record. (JS 11, citing <u>Mayes v. Massanari</u>, 276

14  F.3d 453, 459 (9th Cir. 2001) (citing <u>Tonapetyan v. Halter</u>, 242 F.3d

15  1144, 1150 (9th Cir. 2001)).  First, the Commissioner asserts that the

16  ALJ had no duty to develop the record with regard to a mental

17  impairment when Plaintiff did not even allege that he had such an

18  impairment.   This contention is untenable factually, because the

19  intake analyst did note Plaintiff's statement in the disability report

20  that he was taking Lexapro, as prescribed by Dr. Borut, for

21  depression. (AR 51.)  The Court fails to see any ambiguity in this

22  portion of the record.   Of some concern, however, is the

23  Commissioner's apparent position that even if Plaintiff had alleged

24  having a mental condition, he would have had no right to a

25  consultative examination. (<u>See</u> JS 10, citing <u>Reed v. Massanari</u>, 270

26  F.3d 838, 842 (9th Cir. 2001), and 20 C.F.R. §§404.1519(a), 416.919(a)

27  (2007).)  The Court does not interpret <u>Reed</u> so broadly.  In fact, the

28  portion of the opinion cited by the Commissioner merely notes that

1  applicable regulations do not provide a claimant with an affirmative

2  right to have a consultative examination "performed by a chosen

3  specialist.    However,   the   agency's   actions   with   respect   to

4  consultative examinations must be taken in accordance with regulatory

5  procedures.  Andriasan v. INS, 180 F.3d 1033, 1045 (9th Cir.

6  1999)(stating that an agency abuses its discretion when it fails to

7  abide by its own regulations)." (Id. at 842.)

8      The Commissioner cites the regulation which applies to those

9  situations in which a consultative examination will be purchased.

10  These include the following: that additional evidence which is needed

11  is not contained in the records of the medical sources; and, that

12  there is a conflict, inconsistency, ambiguity or insufficiency in the

13  evidence which must be resolved, and which cannot be resolved by re-

14  contacting the medical source. (20 C.F.R. §404.1519a(b)(1), (4).)

15      Here, the Court determines that there was sufficient indication

16  of  the  existence  of  a  possible  severe  mental  impairment,  and

17  therefore, further development of the record is necessary.  The Court

18  has cited those instances in the record which highlight the issue.  In

19  particular, the Commissioner has acknowledged that Lexapro, which

20  Plaintiff  indicated  he  was  taking,  and  which  is  documented  by

21  physician's  notes,  is  a  drug  used  to  treat  depression.   Plaintiff

22  states that he also was prescribed Amitriptyline and indicates this is

23  also an anti-depressant. (See JS 5, fn. 2.)  In addition, the ALJ

24  ordered a CE as a follow-up regarding physical impairments, and in his

25  decision, extensively cited from the report prepared as a result of

26  that examination (see AR 14).  Nevertheless, both the ALJ, and now the

27  Commissioner, fail to acknowledge, or at best benignly interpret, Dr.

28  Benrazavi's recommendation that a psychiatric evaluation is "highly

1 | recommended." The Commissioner believes that Dr. Benrazavi

2 | recommended a psychiatric examination primarily because Plaintiff

3 | presented with a somewhat anxious appearance. (See JS 10.) The Court

4 | wonders, however, whether it is reasonable, without further evidence,

5 | to presume that a physician will "highly recommend" a psychiatric

6 | evaluation because an examinee has a somewhat anxious appearance.

7 | Nevertheless, in combination with the additional evidence in the

8 | record, this provides sufficient indication of a possible mental

9 | impairment requiring further development of the record.

10 | Both sides cite the applicable law in this matter, but it bears

11 | repeating that the ALJ's duty in all cases to develop the record fully

12 | and fairly (see Mayes, supra), is more heightened where there may be

13 | an issue of mental impairment. (See Tonapetyan v. Halter, 242 F.3d

14 | 1144, 1150 (9th Cir. 2001).) The fact that an individual may be

15 | somewhat unaware that he or she has a mental impairment is simply not

16 | dispositive of the issue involved in this case. The Ninth Circuit has

17 | specifically affirmed this principle. (See Nguyen v. Chater, 100 F.3d

18 | 1462, 1465 (9th Cir. 1996).)

19 | For the foregoing reasons, this matter will be remanded for

20 | further hearing consistent with this Decision.

21 | **IT IS SO ORDERED.**

22 |

23 | DATED: June 27, 2008 _____/s/_____

24 | VICTOR B. KENTON
   | UNITED STATES MAGISTRATE JUDGE

25 |

26 |

27 |

28 |